## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ABDUALQADER HOSSIN ALI AL-MOTHAFRI,**<br>  Petitioner,<br><br>  *v.*<br><br>**GEORGE W. BUSH,** *et al.,*<br>  Respondents. | )<br>)<br>)<br>)<br>)<br>)  **Civil Action No. 1:05CV02200**<br>)<br>)<br>)<br>)<br>)<br>) |

## MOTION FOR ORDER REQUIRING RESPONDENTS TO PROVIDE COUNSEL FOR PETITIONER AND THE COURT WITH 30-DAYS ADVANCE NOTICE OF ANY INTENDED REMOVAL OF PETITIONER FROM GUANTANAMO

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and the All Writs Act, 28 U.S.C. § 1651, Petitioners respectfully move for an order requiring Respondents to provide counsel for Petitioners and the Court with advance notice of any intended removal of Petitioner from Guantánamo Bay Naval Base in Cuba. On information and belief, Respondents have contemplated or are contemplating removal of Petitioner from Guantánamo to foreign territories for torture or indefinite imprisonment without due process of law. Petitioner is requesting the advance notice to enable their counsel to contest any such removal from Guantánamo and prevent interference with the jurisdiction of the Court in this matter.

### STATEMENT OF FACTS

Petitioner is a citizen of Yemen who is being detained as an "enemy combatant" at the Guantánamo Bay Naval Base in Cuba. As detailed in the habeas petition he has filed on this

- 1 -

date, he denies being an "enemy combatants" and contends he is being detained in violation of the Constitution, treaties and laws of the United States.

Petitioner in the instant case has reason to fear he will be transferred to a country where he will be tortured and/or detained indefinitely without due process of law. Upon information and belief, the United States has secretly removed detainees and others suspected of terrorist crimes to other countries for interrogation or detention without complying with extradition or other legal process. This practice, known as "rendition," "irregular rendition," or "extraordinary rendition," is understood to be used to facilitate interrogation by subjecting detainees to torture.

According to reports by American and foreign news organizations, including the *Washington Post*, the *Los Angeles Times* and the British Broadcasting Corporation, the United States Government has repeatedly transferred detainees into the custody of foreign governments that employ inhumane interrogation techniques. According to a recent article in the *New Yorker*, the "rendition" process was originally "a program aimed at a small, discrete set of suspects – people against whom there were outstanding foreign arrest warrants," but after September 11 came to include a "wide and ill-defined population that the Administration terms 'illegal enemy combatants.'" Jane Mayer, *Outsourcing Torture*, New Yorker, Feb. 14, 2005, at http://www.newyorker.com/fact/content/?050214fa_fact6, ¶ 7. According to the *Washington Post*,

> Since Sept. 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States, bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence sources. The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics – including torture and threats to families – that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogation, the sources said.

DSMDB.1997313.1

Rajiv Chanrasekaran & Peter Finn, *U.S. Behind Secret Transfer of Terror Suspects*, Wash. Post, Mar. 11, [2002], at A1; *see also* Dana Priest & Barton Gellman, *U.S. Decries Abuse But Defends Interrogations,* Wash. Post, Dec. 26, 2002, at A1. The countries to which detainees may be brought are known to practice torture. *See, e.g.*, Megan K. Stack & Bob Drogin, *Detainee Says U.S. Handed Him Over For Torture,* L.A. Times, Jan. 13, [2005], at A1 ("News accounts, congressional testimony and independent investigations suggests that [the CIA] has covertly delivered at least 18 terrorism suspects since 1998 to Egypt, Syria, Jordan and other Middle Eastern nations where, according to State Department reports, torture has been widely used on prisoners.").

According to recent news accounts, Guantánamo detainee Mamdouh Habib was rendered to Egypt by the United States *before* being moved to Cuba. During his six months in Egyptian custody, Mr. Habib was allegedly tortured without mercy:

> He said that he was beaten frequently with blunt instruments, including an object that he likened to an electric "cattle prod." And he was told that if he didn't confess to belonging to Al Qaeda he would be anally raped by specially trained dogs. . . . Habib said that he was shackled and forced to stand in three torture chambers: one room was filled with water up to his chin, requiring him to stand on tiptoe for hours; another chamber, filled with water up to his knees, had a ceiling so low that he was forced into a prolonged, painful stoop; in the third, he stood in water up to his ankles, and within sight of an electric switch and a generator, which his jailers said would be used to electrocute him if he didn't confess.

Mayer, *Outsourcing Torture* at [¶ 54.] The credibility of Mr. Habib's account is bolstered by the State Department, which has consistently identified the Egyptian government as a practitioner of torture. In a report released on February 28, 2005, for example, the State Department found that "there were numerous, credible reports that security forces tortured and mistreated detainees" and that "torture and abuse of detainees by police, security personnel, and prison guards re-

DSMDB.1997313.1

mained common and persistent." Dep't of State, *Country Reports On Human Rights Practices, Egypt 2004*, at http://www.state.gov/g/drl/rls/hrrpt/2004/41720.htm, § 1(c).

Petitioner also has reason to fear that he will be transferred into the custody of the government of Yemen or a third country for continued illegal detention without due process of law. On information and belief, a number of detainees have been removed to countries – including Pakistan and Kuwait – where they have been imprisoned and denied access to the courts. Moreover, recent news reports indicate that the United States government has contemplated transferring "large numbers of Afghan, Saudi and Yemeni detainees from the military's Guantánamo Bay, Cuba, detention center into new U.S.-built prisons in their home countries." Dana Priest, *Long-Term Plan Sought For Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1.

## ARGUMENT

Under the All Writs Act, 28 U.S.C. § 1651(a), this Court has the inherent power "to issue injunctions to protect its jurisdiction." *SEC v. Vision Communications, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996); *Envtl. Def. Fund v. EPA*, 485 F.2d 780, 784 n.2 (D.C. Cir. 1973). Petitioner's request meets the most fundamental purpose of preliminary injunctive relief, "to preserve the status quo between the parties pending a final determination of the merits of the action." 13 Moore's Federal Practice 3d, § 65.20 (2004).

Each of the four factors to be weighed in awarding preliminary injunctive relief favors the requested injunction here: (1) Petitioner will suffer irreparable harm if the injunction is denied; (2) no harm will be suffered by Respondents if the injunction is granted; (3) Petitioner are likely to succeed on the merits of their claims; and (4) there is a clear public interest in preventing the United States Government from rendering individuals to foreign countries for detention and torture. *See Al-Fayed v. CIA*, 254 F.3d 300, 303 & n.2 (D.C. Cir. 2001); *Serono Labs., Inc. v. Sha-*

- 4 -

*lala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060,

1066 (D.C. Cir. 1998).

Petitioner stands to suffer immeasurable and irreparable harm – from torture to possible

death – at the hands of a foreign government. Transfer to another country, even if "only" for con-

tinued imprisonment, also circumvents Petitioner's right to adjudicate the legality of their deten-

tion in this Court. By contrast, Respondents, who have already held Petitioner for several years,

are asked only to provide counsel and the Court with adequate notice of any intended removal of

Petitioner from Guantánamo. Respondents can suffer no conceivable harm from complying with

such a request.

Petitioner is likely to succeed on the merits of his claims. Petitioner has properly invoked

the jurisdiction of this Court. *See Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004). Judge Green has

already ruled that detainees in similar circumstances to Petitioner, Abdualqader Hossin Ali Al-

Mothafri, have stated actionable claims under the Due Process Clause and the Geneva Conven-

tions. For the United States Government to remove Petitioners to countries that would afford no

such protections would be to flout Judge Green's ruling and interfere with the Court's jurisdic-

tion. Such a transfer would also violate basic international legal norms embodied not only in the

Geneva Conventions but also in the International Covenant on Civil and Political Rights and the

Convention Against Torture and Other Cruel and Degrading Treatment and Punishment.

Finally, public policy favors requiring Respondents to provide advance notice to counsel

and the Court of any intended removal of Petitioner from Guantanamo. No matter how satisfied

the Executive Branch may be that its actions are lawful, the public good requires that a federal

litigant – properly before the Court and represented by counsel – be provided with a meaningful

opportunity to contest his transfer into the hands of those who might torture him or detain him

indefinitely.

## CONCLUSION

For the reasons discussed above, the motion should be granted.

Dated: November 17, 2005                        Respectfully submitted,

                                                Counsel for Petitioner:

                                                _____
                                                Frank C. Razzano (DC360173)
                                                Reginald B. McKnight (DC493946)
                                                David L. Gunn (DC488761)
                                                DICKSTEIN SHAPIRO MORIN
                                                  & OSHINSKY LLP
                                                2101 L Street N.W.
                                                Washington, D.C. 20037
                                                Tel: (202) 785-9700
                                                Fax: (202) 887-0689

                                                *Of Counsel*
                                                Barbara J. Olshansky (NY0057)
                                                Director Counsel
                                                Tina Monshipour Foster (NY5556)
                                                Gitanjali S. Gutierrez (NY1234)
                                                CENTER FOR CONSTITUTIONAL RIGHTS
                                                666 Broadway, 7th Floor
                                                New York, New York 10012
                                                Tel: (212) 614-6439
                                                Fax: (212) 614-6499

DSMDB.1997313.1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was sent via electronic

filing this 17th day of November 2005, to the following persons:

**Kenneth L. Wainstein**
U.S. ATTORNEY
District of Columbia District
Judiciary Center
555 4th Street, NW
Washington, D.C. 20530
**[By Hand Delivery]**

**Alberto R. Gonzales**
ATTORNEY GENERAL OF THE UNITED STATES
U.S. Department of Justice
Robert F. Kennedy Building
Tenth Street & Constitution Ave., NW
Room 5111
Washington, D.C. 20530
**[By Hand Delivery]**

**George W. Bush**
PRESIDENT, UNITED STATES OF AMERICA
The White House
1600 Pennsylvania Avenue, NW
Washington, D.C. 20301-1000

**Donald Rumsfeld**
SECRETARY, U.S. DEP'T. OF DEFENSE
1000 Defense Pentagon
Washington, D.C. 20301-1000

**Army Brig. Gen. J. Hood**
COMMANDER, JOINT TASK FORCE-GTMO
JTF-GTMO
APO AE 09360

**Brig. Gen. Hood**
UNITED STATES ARMY
Army Pentagon
Washington, D.C. 20310-0200

**Army Col. Bumgarner**
COMMANDER, JDOG
JTF-GTMO
APO AE 09360

**Army Col. Bumgarner**
UNITED STATES ARMY
Army - Pentagon
Washington, D.C. 20310-0200

**Terry Henry**
Senior Trial Attorney
Federal Programs Branch
Civil Division—Room 7144
Deptartment of Justice
20 Mass Avenue, NW
Washington, D.C. 20530
*Via electronic mail to: terry.henry@usdoj.gov*

**Andrew Wilson**
Trial Attorney
Civil Division
Federal Programs Branch
20 Mass Avenue, NW
Washington, D.C. 20530
*Via electronic mail to: Andrew.warden@usdoj.gov*

On this the 17th day of November, 2005.

Reginald B. McKnight